**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


| | |
|---|---|
| DAVID EDWARD LORE JR. and ANGELA LORE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  1:12CV165 |
| | ) |
| SANDRA WILKES – DIRECTOR OF ROWAN COUNTY DEPT. OF SOCIAL SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>

This case comes before the Court on Plaintiffs' Applications for Leave to Proceed *In Forma Pauperis* (Docket Entries 1, 2), filed in conjunction with their pro se Complaint (Docket Entry 3). The Court will grant Plaintiffs' Applications for the limited purpose of recommending dismissal of this action pursuant to 28 U.S.C. § 1915(e)(2)(B) for frivolity, failure to state a claim, and pursuit of damages from a Defendant with immunity from such relief.[1]

### <u>LEGAL BACKGROUND</u>

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely

---

[1] Plaintiffs' Applications list monthly income beyond their reported joint expenses. (<u>See</u> Docket Entry 1 at 1-3; Docket Entry 2 at 1-3.) However, given the recommendation of dismissal, no need exists to address further their ability to pay the filing fee.

because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

As to the first of these grounds for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the

2

totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256-57 (some internal quotation marks omitted). In considering such matters, this Court may "apply common sense." Nasim, 64 F.3d at 954.

Alternatively, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(b)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2]

---

[2] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement
(continued...)

The third ground for dismissal under 28 U.S.C. § 1915(e)(2)(B) generally applies to situations in which doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from liability for damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy").

## DISCUSSION

Plaintiffs' Complaint asserts the following claims "pursuant to 42 U.S.C. § 1983" (Docket Entry 3 at 1):

---

[2](...continued)
that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly in dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

4

1) Defendant Kris Sapper of the Rowan County Department of Social Services and/or Defendant John Brindle of the Rowan County Sheriff's Office illegally searched Plaintiffs' residence on February 17, March 21, and March 23, 2011, in violation of the First and Fourteenth Amendments to the United States Constitution (id. at 3-4);[3]

2) Defendant Brindle and Defendant John Doe #16 of the Rowan County Animal Control entity illegally searched "Pet Place ([Plaintiff] Angela Lore's place of business)" on March 23, 2011, in violation of the First and Fourteenth Amendments (id. at 4);

---

[3] As to this and several other aspects of Plaintiffs' § 1983 claims, the Complaint purports to rely on violations not only of the United States Constitution, but also the North Carolina Constitution. (See Docket Entry 3 at 3-6.) However, "violations of state law are not cognizable under § 1983." Love v. Peppersack, 47 F.3d 120, 124 n.5 (4th Cir. 1995) (citing Clark v. Link, 855 F.2d 156, 161 (4th Cir. 1988)); accord Gantt v. Whitaker, 57 F. App'x 141, 146 (4th Cir. 2003) (declaring that "§ 1983 does not provide redress for violations of state law" (citing White v. Chambliss, 112 F.3d 731, 738 (4th Cir. 1997))). Similarly, the allegations of the Complaint regarding citizenship (see Docket Entry 3 at 2-3) foreclose the exercise of diversity jurisdiction over any state-law claims, see 28 U.S.C. § 1332(a). Finally, to the extent one could read the Complaint to assert state-law claims over which the Court would possess supplemental jurisdiction, see 28 U.S.C. § 1367(a), such claims should not proceed, in light of the recommendation of dismissal of all federal claims. See 28 U.S.C. § 1367(c)(3) ("[T]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of [the] plaintiff's right . . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

5

3) "[b]etween the dates of February 16ᵗʰ 2011 and March 23ʳᵈ 2011, [Defendant] Sapper did conduct multiple interviews with 4 of [Plaintiffs'] children while the children were in the private residence of [extended family members] and without the consent or knowledge of [Plaintiffs] . . . [in] violation of the 4ᵗʰ Amendment and the 14ᵗʰ Amendment" (id.);

4) "[b]etween the dates of March 23, 2011 and March 30, 2011, [Plaintiff Angela] Lore was confined to the Rowan County Detention Center . . . [where] [d]uring processing . . . her asthma medications [were] removed from her person and seized by [Defendant] Jane Doe #1 . . . [and Plaintiff Angela Lore] was denied medically necessary asthma medicine despite repeated attempts to secure such medication . . . [from Defendants] John and Jane Doe [##] 1-8 . . . in violation of the 8ᵗʰ Amendment and 14ᵗʰ Amendment to the United States Constitution" (id. at 4-5; see also id. at 7 (identifying "[Defendants] John & Jane Doe #[#] 1-15 . . . as officers at the Rowan County Detention Center"));

5) "[b]etween the dates of March 23, 2011 and March 30, 2011, [Plaintiff David] Lore was confined to the Rowan County Detention Center . . . [where he] was denied medically necessary access to his CPAP machine to control his severe sleep apnea despite repeated attempts to [Defendants] John Doe #[#] 9-14 to secure the equipment . . . [in] violation of the 8ᵗʰ Amendment and 14ᵗʰ Amendment" (id. at 5; see also id. at 7 (identifying "[Defendants] John & Jane Doe

6

#[#] 1-15 . . . as officers at the Rowan County Detention Center")); [4]

6) during that same week, "[Plaintiff David] Lore was subject to being held in an isolated cell with minimum time outside of his cell (2 hours per day) and was denied personal grooming materials required to be provided to prisoners . . . [in] violation of the 8th Amendment and the 14th Amendment" (id. at 5); and

7) on March 23, 2011, Defendant G.L. Jones, a Rowan County Magistrate, "issued a secured bond order in the amount of $250,000 against [Plaintiffs] . . . [which] amount was more than 12 times the amount supported by court guidelines for bond amounts despite the fact that all mitigating circumstances described [in state law] were met in favor of [Plaintiffs] . . . [in] violation of the 8th Amendment and the 14th Amendment" (id. at 5-6).

Under the heading "PARTIES," in addition to the above-referenced Defendants Sapper, Brindle, Jones, and John/Jane Doe ##1-16 (each of whom it purports to name only in their "individual capacit[ies]" (id. at 6-7)), the Complaint identifies as Defendants: 1) Sandra Wilkes, Director of Rowan County Department of Social Services (id. at 2); 2) Kevin Auten, Sheriff of Rowan

_____

[4] The Complaint further alleges that, "[o]n April 6, 2011, [Plaintiff David] Lore was confined to the Rowan County Detention Center . . . [and] was denied medically necessary access to his CPAP machine to control his severe sleep apnea despite repeated attempts to secure the equipment . . . [from Defendant John Doe #15 to whom Plaintiff David] Lore again explained his medical condition and his need for his CPAP device." (Docket Entry 3 at 6.)

County (id.); and 3) the "Rowan County Magistrate's Office" (id.). Further, although the "PARTIES" Section of the Complaint omits any reference to him, the caption of the Complaint lists "Clai Martin – Director of Rowan County Animal Control" as a Defendant. (Id. at 1.) According to the Complaint, Plaintiffs wish to proceed against Defendants Wilkes, Auten, Rowan County Magistrate's Office, and Martin only in their "official capacit[ies]." (Id. at 6-7.)

The Complaint seeks "a declaratory judgment that the actions of [] [D]efendants violated the United States Constitution[, as well as] . . . compensatory damages . . . [and] punitive damages . . . ." (Id. at 8.) The Court should dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous, for failure to state a claim, and due to its pursuit of damages from a Defendant with immunity from such relief.

<u>Searches of Plaintiffs' Residence</u>

In assessing the viability of Plaintiffs' claims regarding the three alleged illegal searches of their residence (see Docket Entry 3 at 3-4), the Court properly may take judicial notice that North Carolina Department of Public Safety records document Plaintiffs' convictions in Rowan County on October 31, 2011, for using and possessing drug paraphernalia on March 23, 2011, and for contributing to the delinquency of a minor on January 20, 2010, see www.doc.state.nc.us ("Offender Public Information" searches for

8

"David Lore" and "Angela Lore" last performed on Oct. 28, 2013);[5]
see also Fed. R. Evid. 201(b) ("The court may judicially notice a
fact that is not subject to reasonable dispute because it . . . can
be accurately and readily determined from sources whose accuracy
cannot reasonably be questioned."); Papasan v. Allain, 478 U.S.
265, 268 n.1 (1986) ("Although this case comes to us on a motion to
dismiss under Federal Rule of Civil Procedure 12(b), we are not
precluded in our review of the complaint from taking notice of
items in the public record . . . ."); Hall v. Virginia, 385 F.3d
421, 424 n.3 (4th Cir. 2004) (endorsing the taking of judicial
notice of data on state website in connection with analysis of
legal sufficiency of complaint); Stiles v. Marsh, No. 1:13CV86RJC,
2013 WL 3455942, at *1 n.1 (W.D.N.C. July 9, 2013) (unpublished)
(taking judicial notice of conviction records on "North Carolina
Department of Public Safety web site" for purposes of initial
screening of pro se complaint under 28 U.S.C. § 1915A).

Those convictions have significance to the Court's instant
inquiry under 28 U.S.C. § 1915(e)(2), because:

> to recover damages for . . . harm caused by actions whose
> unlawfulness would render a conviction or sentence
> invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct

---

[5] Said records further establish Plaintiff David Lore's
conviction on October 31, 2011, for three other counts of
contributing to the delinquency of a minor (on November 28, 2009,
January 27 and August 29, 2010, respectively), and Plaintiff Angela
Lore's conviction on October 31, 2011, for an additional count of
contributing to the delinquency of a minor (on July 27, 2010).

9

appeal, expunged by executive order, declared invalid by
a state tribunal authorized to make such determination,
or called into question by a federal court's issuance of
a writ of habeas corpus. <u>A claim for damages bearing
that relationship to a conviction or sentence that has
not been so invalidated is not cognizable under § 1983.</u>
Thus, when a [plaintiff] seeks damages in a § 1983 suit,
the district court must consider whether a judgment in
favor of the plaintiff would necessarily imply the
invalidity of his conviction or sentence; if it would,
the complaint must be dismissed unless the plaintiff can
demonstrate that the conviction or sentence has already
been invalidated.

<u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) (internal footnote

and citation omitted) (emphasis added).

In this case, the Complaint specifically alleges that, during

the searches of their residence on February 17, March 21, and March

23, 2011, Defendants Sapper and/or Brindle collected evidence for

use in connection with criminal charges instituted against

Plaintiffs on March 23, 2011. (<u>See</u> Docket Entry 3 at 3-4.)

Moreover, the Complaint asserts that the material omission of

Defendant Brindle's participation in the search of Plaintiffs'

residence on March 21, 2011, rendered illegal the search of their

residence on March 23, 2011. (<u>See</u> <u>id.</u>) "If [Plaintiffs] succeed[]

in demonstrating in this § 1983 case that [the searches of their

residence] w[ere] illegal, the illegality of the search[es] would

require the suppression of the evidence seized. [Further, the

Complaint] has advanced no circumstances . . . to suggest how the

state could convict [them of the drug paraphernalia and

contributing-to-delinquency-of-minors offenses] if the [searches of

their residence] were to have been found illegal." Ballenger v. Owens, 352 F.3d 842, 847 (4th Cir. 2003). Finally, the Complaint does not allege that invalidation of those convictions already has occurred. (See Docket Entry 3 at 1-8.)

Given the foregoing considerations, "the Court [should] dismiss the Complaint without prejudice pursuant to *Heck v. Humphrey*." Stiles, 2013 WL 3455942, at *2 (dismissing action "alleging that [the plaintiff's] Fourth Amendment rights were violated when officers came to his residence with [an illegal] search warrant," where he "ha[d] not alleged in his [c]omplaint that his underlying conviction [for a child sexual offense] ha[d] been reversed or otherwise invalidated").

### Search of Plaintiff Angela Lore's Workplace

The Complaint alleges that Defendant Brindle "enter[ed] Pet Place . . . and instructed [Defendant] John Doe #16 . . . to enter a closed door to at [sic] the rear of the store and conduct a search for any evidence of criminal activity. [Defendant] John Doe #16 proceeded to conduct a search of the storage area." (Docket Entry 3 at 4.) "The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures' by the government or its agents." United States v. Seidman, 156 F.3d 542, 547 (4th Cir.

11

1998) (quoting U.S. Const. amend. IV) (emphasis added).[6] Fourth Amendment jurisprudence, however, rejects the notion "'that business premises may not reasonably be inspected in many more situations than private homes.'" <u>United States v. Golden</u>, 413 F.2d 1010, 1011 (4th Cir. 1969) (quoting <u>See v. City of Seattle</u>, 387 U.S. 541, 546 (1967)) (internal ellipses omitted). In particular, no Fourth Amendment violation occurs when a government official conducts "an inspection of business premises open to the public and a proprietor [] ma[kes] no objection to the inspection." <u>Id.</u>; <u>see also</u> <u>United States v. Ealy</u>, 363 F.3d 292, 295 n.1 (4th Cir. 2004) ("reject[ing] [the defendant's] contention that the officers' warrantless entry into the garage violated his Fourth Amendment rights," where the officers "entered the garage in precisely the manner that potential customers entered").

In connection with Plaintiffs' claim that an illegal search of their residence took place on February 17, 2011, the Complaint expressly alleges that Defendant Sapper "had not received permission or a warrant to enter the premises." (Docket Entry 3 at 3.) Similarly, as to the claim regarding the search on March 21, 2011, the Complaint affirmatively declares that Defendants Sapper and Brindle "again entered the residence of [Plaintiffs] without

---

[6] "The Fourth Amendment is enforceable against the States [and their subdivisions] through the Fourteenth Amendment." <u>Camara v. Municipal Ct. of City & Cnty. of San Francisco</u>, 387 U.S. 523, 528 (1967).

permission or a warrant." (Id.) Plaintiffs' claim concerning the search of Pet Place, however, conspicuously omits any allegation that Defendants Brindle and John Doe #16 acted without consent from a proprietor of the business or without a warrant. (See id. at 4.) Nor does the Complaint contain any factual matter indicating that Defendants Brindle and John Doe #16 initially entered Pet Place in a manner unlike members of the public. (See id.)

Under these circumstances, Plaintiffs have failed to state a claim regarding any search of Pet Place; indeed, the insufficiency of the allegations rises to the level of legal frivolity.

<u>Interviews of Plaintiffs' Children</u>

Plaintiffs' claim predicated on Defendant Sapper's interviews of their children similarly falls short as a matter of law. "Even if the interviews could be construed as a Fourth Amendment false arrest claim, it would be the children's claim, not their parents[']." <u>Wright v. Szczur</u>, No. 11CV140S, 2012 WL 268283, at *8 n.15 (W.D.N.Y. Jan. 30, 2012) (unpublished); <u>see also</u> <u>Phillips v. County of Orange</u>, 894 F. Supp. 2d 345, 378 n.30 (S.D.N.Y. 2012) (recognizing that parents "do not have cognizable Fourth Amendment claims based on [their child's] interview" by government official).[7] Moreover, to the extent such interviews potentially

---

[7] Given that Plaintiffs have brought this suit in their own names (<u>see</u> Docket Entry 3 at 1, 2, 8), they lack standing to pursue (and this Court thus lacks jurisdiction to adjudicate) any such Fourth Amendment claims of their children. <u>See, e.g.</u>, <u>Smith v.</u>
(continued...)

implicated Plaintiffs' Fourteenth Amendment substantive due process rights, the Complaint does not allege facts that support such a claim. See Phillips, 894 F. Supp. 2d at 379-80 ("To state a claim for violation of a substantive due process right, a plaintiff must demonstrate that the state action was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection. . . . [The plaintiffs] have not stated a plausible claim that [the] [d]efendants' interview of [the plaintiffs' child] . . . w[as] even remotely outrageous or conscience shocking . . . ." (internal citations, footnote, and quotation marks omitted)). Again, the patent deficiency of this claim renders it legally frivolous.

<u>Conditions of Pretrial Confinement</u>

For Plaintiffs' claims related to their experiences as "pretrial detainee[s], [their] treatment and the conditions of

---

[7](...continued)
<u>Frye</u>, 488 F.3d 263, 272 (4th Cir. 2007) (describing "dismissal for lack of standing" as dismissal "for lack of jurisdiction" and explaining "that under Article III of the United States Constitution, a plaintiff . . . cannot rest his claim to relief on the legal rights or interests of third parties"). This defect renders any such aspect of the Complaint legally frivolous. <u>See, e.g.</u>, <u>Padilla v. Enzor</u>, 279 F. App'x 606, 615 (10th Cir. 2008) ("The district court dismissed this claim as frivolous holding [the plaintiff] does not have 'standing to raise a claim on behalf of the prisoners' families.' We agree."). Nor, in light of their pro se status, could Plaintiffs proceed with a "next friend" action for their children. <u>See</u> <u>Myers v. Loudoun Cnty. Pub. Sch.</u>, 418 F.3d 395, 401 (4th Cir. 2005) ("join[ing] the vast majority of [its] sister circuits in holding that non-attorney parents generally may not litigate the claims of their minor children in federal court").

14

[their] restraint are evaluated under the Due Process Clause of the Fourteenth Amendment." <u>Robles v. Prince George's Cnty., Md.</u>, 302 F.3d 262, 269 (4th Cir. 2002); <u>accord</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16 (1979) ("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees."). In that regard, "when the State takes a person into its custody and holds him [or her] there against his [or her] will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his [or her] safety and general well-being." <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 199-200 (1989). In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him [or her] unable to care for himself [or herself], and at the same time fails to provide for his [or her] <u>basic human needs</u> — <u>e.g.</u>, food, clothing, shelter, <u>medical care</u>, and reasonable safety — it transgresses the substantive limits on state action set by . . . the Due Process Clause." <u>Id.</u> at 200 (emphasis added).

The following standard applies to claims that government officials violated a pretrial detainee's foregoing rights:

> First, a constitutional violation occurs only where the deprivation alleged is "objectively, sufficiently serious." For a claim based on a failure to prevent harm, a [plaintiff] must show that he [was] detained or incarcerated "under conditions posing a substantial risk of serious harm." . . . Second, an official must have "a sufficiently culpable state of mind." In

> prison[/jail]-conditions cases, the requisite state of
> mind is "deliberate indifference."

Brown v. Harris, 240 F.3d 383, 388–89 (4th Cir. 2001) (quoting
Farmer v. Brennan, 511 U.S. 825, 834 (1994)) (internal citations
and secondary internal quotation marks omitted).[8]  Plaintiffs have
not alleged factual matter sufficient to satisfy this standard.

First, the Complaint fails to set forth non-conclusory
allegations which (if accepted as true) would establish that any
seizure of Plaintiff Angela Lore's asthma medication upon her
processing into the Rowan County Detention Center or any failure to
provide medication to her during the week she spent in pretrial
detention "pos[ed] a substantial risk of serious harm," id. at 389
(internal quotation marks omitted).  "When addressing whether
asthma represents a medical need of constitutional significance,
courts generally distinguish between the condition itself and its
manifestation, including through asthma attacks."  Peterson v.
Cecot, No. 9:09CV1056(GTS/DEP), 2011 WL 4343842, at *4 (N.D.N.Y.
Mar. 8, 2011) (unpublished), recommendation adopted, 2011 WL

---

[8] As the Fourth Circuit has observed, Farmer "addressed only
the duties of 'prison officials' under the Eighth Amendment.
Farmer, however, merely defined the term 'deliberate indifference,'
a standard previously employed by the Supreme Court in Estelle v.
Gamble, 429 U.S. 97 (1976), and its progeny.  See Farmer, 511 U.S.
at 829.  Farmer in no way undermined [the Fourth Circuit's prior]
holding . . . that the same 'deliberate indifference' standard
applies to both inmates and pretrial detainees.  Indeed, other
circuits have imported the Farmer framework into cases involving
pretrial detainees."  Brown, 240 F.3d at 388 n.6 (internal parallel
citations omitted).

16

4343995 (N.D.N.Y. Sept. 14, 2011) (unpublished). Moreover, "some asthma 'attacks' are mild and brief in duration, while others are severe, prolonged, and even life threatening. Courts recognize this distinction and refuse to fashion a rule that every instance of failure to treat a . . . detainee's asthma rises to the level of a constitutional claim." Crosby v. Perry, No. 4:09CV139(CDL), 2010 WL 2464887, at *6 n.9 (M.D. Ga. June 14, 2010) (unpublished).

Indeed, "[m]ost courts that have addressed the issue have required a showing that the asthma attack was severe or that it led to physical harm." Id. In sum, "[a] plaintiff who fails to allege and prove that a defendant's actions have caused or exacerbated symptomology associated with asthma cannot demonstrate that his or her condition represents a serious medical need." Peterson, 2011 WL 4343842, at *4. Here, the Complaint contains no allegations that, while in pretrial detention, Plaintiff Angela Lore endured a severe asthma attack or suffered any harm from any denial of access to asthma medication. (See Docket Entry 3 at 4-5.) She thus has failed to state a claim.

Similarly, to the extent Plaintiff David Lore "contends that [Defendants John Doe ## 9-15] were deliberately indifferent to his serious medical needs by failing to provide him with a CPAP (continuous positive airway pressure) machine for his sleep apnea . . .[,] [n]either his complaint nor [any other record material] reflects that [he] suffered substantial harm as a result of not

17

receiving CPAP treatment. Thus, whatever deficiencies there may have been in [his] treatment, if any, certainly do not rise to the level of establishing deliberate indifference . . . ." <u>Washington v. Thomas</u>, No. 00-20981, 264 F.3d 1140 (table), 2001 WL 822443, at *1 (5th Cir. June 18, 2001) (unpublished); <u>accord</u> <u>Boles v. Newth</u>, 479 F. App'x 836, 840 (10th Cir. 2012) (affirming dismissal where the plaintiff "d[id] not allege . . . that being deprived of the devices [for treating sleep apnea] for several days would place [him] in imminent harm rather than the theoretical possibility of such harm"); <u>Pennington v. Mayor of Pike Cnty.</u>, No. 2:11CV781TMH, 2011 WL 5102041, at *3 (M.D. Ala. Sept. 30, 2011) (unpublished) (deeming claim for denial of CPAP machine frivolous and observing that, "[w]hile [the] [p]laintiff's sleep without a CPAP machine may not be as comfortable as it is with one, he has not shown that [the] [d]efendants acted with deliberate indifference to his serious medical needs . . . [because] [h]is factual allegations fail to establish that [the] [d]efendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; that they actually drew that inference; and that their response indicated that they subjectively intended that harm occur" (citing <u>Farmer</u>, 511 U.S. at 837)), <u>recommendation adopted</u>, 2011 WL 5101977 (M.D. Ala. Oct. 27, 2011) (unpublished).[9]

---

[9] In other words, as with Plaintiff Angela Lore's asthma-medication claim (<u>see</u> Docket Entry 3 at 4), the Complaint merely
(continued...)

As a final matter, the Complaint alleges that, while detained during the week of March 23-30, 2011, Plaintiff David Lore "was subject to being held in an isolated cell with minimum time outside of his cell (2 hours per day) and was denied personal grooming materials required to be provided to prisoners." (Docket Entry 3 at 6.) These allegations fail to state a claim, particularly given the Complaint's lack of factual matter indicating that he suffered any harm (see id.). See, e.g., Harris v. Fleming, 839 F.2d 1232, 1234-35 (7th Cir. 1988) (affirming rejection of constitutional claim for denial of "basic human needs," despite fact that the plaintiff "was not provided with toilet paper for five days . . . and that he lacked soap, toothbrush, and toothpaste for ten days," because "[a]lthough [he] experienced considerable unpleasantness, he suffered no physical harm"); Kinser v. County of San Bernardino, No. ED CV 11-0718-RGK (PJW), 2011 WL 4801899, at *4 (C.D. Cal. Aug. 25, 2011) (unpublished) ("[The plaintiff] alleges that she has been confined to her cell more than 22 hours a day and that she has had

---

[9](...continued)
asserts in conclusory fashion that the CPAP machine was "medically necessary" (id. at 5, 6). Bald assertions of that sort do not suffice. See Iqbal, 556 U.S. at 678. Nor does the Complaint state a viable claim based on the allegation that, on April 6, 2011, Plaintiff David Lore "was subject to a variety of threat [sic] made by other inmates in the presence of [Defendant] John Doe #15 related to his severe sleep apnea . . . [and that Defendant] John Doe #15 ignored the threats" (Docket Entry 3 at 6), particularly given that the Complaint lacks any allegation that any inmate ever acted on any such threat (see id.). See Wilson v. McKeller, 254 F. App'x 960, 961 (4th Cir. 2007) ("[M]ere threats or verbal abuse, without more, do not state a cognizable claim under § 1983.").

to eat all her meals in her cell in close proximity to her toilet. These allegations by themselves do not state a Fourteenth Amendment conditions of confinement claim."), recommendation adopted, 2011 WL 4802850 (C.D. Cal. Oct. 11, 2011) (unpublished); O'Mara v. Hillsborough Cnty. Dep't of Corr., No. 08-cv-51-SM, 2008 WL 5077001, at *4 (D.N.H. Nov. 24, 2008) (unpublished) ("[The plaintiff's] allegations are insufficient to state a cognizable constitutional claim. His complaint that he was afforded only two hours of out-of-cell time a day does not state a claim of constitutional dimension.").

## Excessive Bail

The United States Constitution states that "[e]xcessive bail shall not be required . . . ." U.S. Const. amend VIII.[10] The Complaint alleges that, on March 23, 2011, Defendant Jones set too high of a secured bond for Plaintiffs. (Docket Entry 3 at 5-6.) However, elsewhere, the Complaint makes clear that Plaintiffs' detention on such bonds ended on March 30, 2011. (See id. at 4-5.)[11] Plaintiffs thus cannot secure declaratory relief. See Mixson v. Lombard, C/A No. 2:11-1468, 2011 WL 7052716, at *1-2 (D.S.C. Aug. 12, 2011) (unpublished) (concluding that, where the complaint

---

[10] "[T]he Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment." Schilb v. Kuebel, 404 U.S. 357, 365 (1971).

[11] Moreover, as discussed in a preceding subsection, the Court properly may take judicial notice that Plaintiffs' underlying state criminal cases have concluded with convictions.

acknowledged that the plaintiff no longer remained in pretrial custody on charges as to which the state magistrate allegedly had set an excessive bail, "[the] [p]laintiff is not entitled to the declaratory relief that he seeks . . . because he does not ask the court to define the parties' rights in the future, he seeks merely a declaration from the court that [the state magistrate] violated his rights in the past"), recommendation adopted, 2012 WL 137871 (D.S.C. Jan. 18, 2012) (unpublished); Mack v. Fox, No. 1:07CV760, 2008 WL 4832995, at *2 (M.D.N.C. Nov. 4, 2008) (unpublished) (deeming request for declaratory relief as to actions of state magistrates moot where underlying state charges no longer stood), recommendation adopted, 2008 WL 7674789 (M.D.N.C. Dec. 10, 2008) (unpublished). Further, "[a]s judicial officers, magistrates are entitled to absolute immunity for acts performed in their judicial capacity." Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987). The setting of bond constitutes such action and thus Defendant Jones possesses absolute immunity from damages as to the instant claims. See, e.g., El-Bey v. City of Thomasville, No. 1:11CV413, 2012 WL 1077896, at *1-2 (M.D.N.C. Mar. 30, 2012) (unpublished) (describing state magistrate's establishment of bond as action taken in "official judicial capacit[y] . . . [thus] entitl[ing] [her] to absolute immunity against damages"), recommendation adopted, 2013 WL 5461819 (M.D.N.C. Sept. 30, 2013) (unpublished).

<u>Official Capacity Claims</u>

Plaintiffs' official capacity claims against Defendants Wilkes, Auten, and Martin (<u>see</u> Docket Entry 3 at 6-7) constitute claims "against the governmental entity employing [each of them]," <u>Nivens v. Gilchrist</u>, 444 F.3d 237, 249 (4th Cir. 2006), i.e., the Rowan County Department of Social Services, the Office of Sheriff of Rowan County, and the Rowan County Animal Control entity,[12] respectively. The Complaint similarly names the Rowan County Magistrates Office in its "official capacity." (Docket Entry 3 at 7.) Assuming for purposes of discussion only that the foregoing entities each qualify as a person subject to suit under § 1983, "it must be shown that the actions of [their employees] were unconstitutional and were taken pursuant to a custom or policy of the entity." <u>Giancola v. State of W. Va. Dep't of Pub. Safety</u>, 830 F.2d 547, 550 (4th Cir. 1987) (citing <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-92 (1978)); <u>accord</u> <u>Board of Cnty. Comm'rs of Bryan Cnty., Okla.</u>, 520 U.S. 397, 403 (1997) ("[L]ocal governmental bodies . . . may not be held liable under § 1983 solely because [they] employ[ed] a tortfeasor. . . . Instead, in <u>Monell</u> and subsequent cases, [the Supreme Court] ha[s] required a

---

[12] North Carolina law provides that "[a] county may appoint one or more animal control officers and may fix their salaries, allowances, and expenses." N.C. Gen. Stat. § 67-30. It appears that, for purposes of organization, counties often place such officers within county health departments. <u>See, e.g.</u>, <u>Hearne v. Sherman</u>, 350 N.C. 612, 613-14, 516 S.E.2d 864, 865 (1999).

22

plaintiff seeking to impose liability on a [local governmental body] under § 1983 to identify a [local governmental] 'policy' or 'custom' that caused the plaintiff's injury.").

For reasons stated in the preceding subsections, the Complaint lacks factual matter showing unconstitutional actions by employees of the entities in question. Further, the Complaint fails to allege facts which (if accepted as true) would establish that any constitutional violations occurred pursuant to a custom or policy of such entities. (See Docket Entry 3 at 1-8.) To the contrary, the Complaint expressly asserts that "[Defendants] Sapper, Brindle, Jones, and John & Jane Does [## 1-16] . . . violate[d] their own department's [sic] regulations and internal policies." (Id. at 8.) Plaintiffs' official capacity claims thus fail as a matter of law.

<u>CONCLUSION</u>

The Court should dismiss Plaintiffs' Complaint for frivolity, failure to state a claim, and pursuit of damages from a Defendant with immunity from such relief.

**IT IS THEREFORE ORDERED** that Plaintiffs' Applications for Leave to Proceed In Forma Pauperis (Docket Entries 1, 2) are **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous, for failure to state a claim,

and due to its pursuit of damages from a Defendant with immunity from such relief.

    /s/ L. Patrick Auld         
**L. Patrick Auld**
**United States Magistrate Judge**

November 1, 2013